IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | **SEALED** |
| v. | § § | Case No. 4:22-CR-125 |
| JAMES WALKER WATSON, JR. | § § | Judge Mazzant |

THE UNITED STATES GRAND JURY CHARGES:

### General Allegations



FILED

MAY 1 2 2022

Clerk, U.S. District Court
Texas Eastern

At all times material to the facts set forth in this Indictment:

1. **James Walker Watson, Jr.** ("**Watson**") was an individual residing in Plano, Texas, New Smyrna Beach, Florida, and other locations.

2. South Fork Ranch was a tourist attraction and event/concert venue located in the city of Parker, Texas, in the Eastern District of Texas.

3. Music Events Production ("MEP") was a company registered with the Secretary of the State of Texas.

4. **Watson** maintained and controlled a bank account at JP Morgan Chase for MEP.

5. **Watson** maintained and controlled a bank account at Bank of America for MEP.

6. **Watson** maintained and controlled a bank account at Washington Federal Bank in the name of a company called Connoisseurs Collection.

7. **Watson** maintained and controlled an email account with the address "jamjr58@gmail.com."

## COUNTS 1 - 3

Violation: 18 U.S.C. § 1343<br>(Wire Fraud)

8. The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

### The Scheme to Defraud

9. From in or around 2016, and continuing through the present, in the Eastern District of Texas and elsewhere, the defendant, **James Walker Watson, Jr.**, did knowingly devise and perpetrate a scheme and artifice to defraud victims and unlawfully obtain money from such victims by means of false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. § 1343.

10. **Watson** promoted himself as a successful and connected person in the entertainment world. He sought funds from investors through various misrepresentations regarding himself, purported business opportunities, and his use of investor funds. He stated that he required funds for various business purposes, such as to pay legal fees, book bands, and acquire merchandise. He promised the investors a quick turnaround of their capital and a return on their investment.

11. **Watson** told investors at various times that he was planning concerts at South Fork Ranch. These events either never took place or were smaller than represented.

12. **Watson** travelled to the Eastern District of Texas on at least one occasion to meet with potential investors.

13. When **Watson** failed to return investors' funds in the promised time frame, he often threatened that without further investment and involvement from the investors, he would never return their funds at all. Many times, this allowed **Watson** to extract further funds and favors from investors.

14. **Watson** defrauded multiple investors. Below are three examples. All told, **Watson** defrauded victim investors of at least $3,000,000.

### Watson Defrauds S.P.

15. In or about late 2016, **Watson** solicited an investment from individual investor S.P. for **Watson**'s business named Connoisseurs Collection.

16. **Watson** provided a "collateral agreement" where he represented that he would pay S.P. $500,000 within 18 months of S.P.'s initial investment of $40,000 in "startup funds."

17. In or around 2017, **Watson** began asking S.P. for additional funds. Despite his promise and representation to repay S.P., **Watson** represented to S.P. in 2017 that the only way for S.P. to be repaid his investment was to pay additional funds to **Watson** and to continue to assist **Watson** with his business ventures.

18. **Watson** also represented to S.P. that he would use the funds for necessary legal work and to pay legal restitution owed by **Watson**.

19. On or about February 27, 2017, **Watson** used the email address "jamjr58@gmail.com" to write an email to S.P. providing wire instructions for a bank account controlled by **Watson** in order to receive the fraudulently-solicited $25,000.

3

20. In February 2017, based on **Watson**'s representations, statements, and promises, S.P. wired an additional $25,000 to a Connoisseurs Collections bank account at Washington Federal Bank that **Watson** controlled.

21. **Watson** withdrew the majority of the $25,000 provided by S.P. on or about March 1, 2017, including approximately $6,800 withdrawn in cash and $16,200 withdrawn with cashier's checks. The checks were remitted to a moving company and two other individuals who had previously invested money with **Watson**. **Watson** did not use the funds for the promised legal work.

22. In addition to asking S.P. for money, and in furtherance of his scheme, **Watson** asked S.P. to establish a company named Music Events Productions ("MEP"). S.P. registered MEP on **Watson**'s behalf on or about April 26, 2017 with the Secretary of State of Texas. But **Watson** maintained control of MEP's decisions and finances and used S.P. as the public "face" of MEP.

23. S.P. provided additional funds to **Watson** based on his representations and threats. **Watson** provided a signed promissory note in May 2017, which outlined S.P.'s initial $40,000 investment, the $25,000 investment, and other funds provided by S.P. in 2017.

24. **Watson** failed to repay S.P. according to the terms of the promissory note.

25. **Watson** also explained to S.P. that he would only be able to pay S.P. back if S.P. was willing to help him produce a music festival at South Fork Ranch, located in the city of Parker, Texas, in the Eastern District of Texas. Based on these representations and

promises by **Watson**, S.P. helped **Watson** begin plans for Music Fest 2018 at South Fork Ranch.

26. In or around April 2018, S.P. realized **Watson** was using MEP as part of a fraud scheme and demanded that **Watson** remove S.P.'s name from MEP. S.P. ended his relationship with **Watson** in April 2018.

27. S.P. lost over $120,000 because of **Watson**'s fraudulent actions.

### Watson Defrauds S.L.

28. **Watson** met with S.L. in May 2019 and represented to S.L. that he was a successful concert promoter. **Watson** offered S.L. an opportunity to partner with **Watson** for a planned 2020 event at South Fork Ranch. **Watson** represented that funds from S.L. would be used for this music festival.

29. Based on **Watson**'s representations and promises, along with his directions, S.L. transferred $190,000 to **Watson** as follows. On or about June 11, 2019, S.L. submitted a request to wire $75,000 to MEP's Bank of America account controlled by **Watson**. On or about that same date, S.L. wrote a check in the amount of $115,000 and Watson caused this to be deposited into **Watson**'s same MEP bank account.

30. S.P. also signed a partnership agreement with **Watson** in or around June 2019. In the partnership agreement **Watson** promised and represented that S.L. would earn a 10% return on her investment.

31. In contrast to what he represented to S.L., after **Watson** received the $190,000 deposit from S.L., **Watson** withdrew and spent the majority of the $190,000 over

the following three weeks for his own purposes, including for personal expenses, payment to previous investors, and to pay expenses related to **Watson**'s failed 2019 concert event.

32. **Watson** did not repay the $190,000 that S.L. provided and did not pay 10% return on the investment.

33. Thereafter, **Watson** requested additional funds from S.L. **Watson** pressured S.L. into giving **Watson** another $95,000, in addition to the original $190,000 investment.

34. **Watson** has only made minimal payments to S.L., leaving her with a significant loss.

## Watson Defrauds A.C.

35. **Watson** solicited additional funds from investor A.C. The business opportunity presented to A.C. was a multi-day concert to be held at South Fork Ranch in May 2020. **Watson** represented to A.C. that **Watson** would use funds from A.C. for pre-production expenses for this event.

36. Based on **Watson**'s statements and representations, A.C. signed a partnership agreement with **Watson**. A.C. also wired $120,000 from A.C.'s business bank account to an MEP bank account that **Watson** controlled.

37. The partnership agreement signed by **Watson** and A.C. contained a promise and representation that **Watson** and MEP would return A.C.'s initial $120,000 principal within approximately three months and provide an additional $120,000 to A.C. at a later date.

38.     **Watson** failed to make any of the contracted payments and began making excuses to A.C. after no funds were ever returned.

39.     Instead of using the funds for concert expenses, **Watson** made large cash withdrawals using the funds provided by A.C. He also made payments to previous investors.

40.     A.C. lost the entirety of his $120,000 investment.

### Acts in Execution of the Scheme

41.     On or about the dates set forth below, in the Eastern District of Texas and elsewhere, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud victims and unlawfully obtain money and property from victims by means of false and fraudulent pretenses, false and fraudulent representations, and false and fraudulent promises, the defendant, **James Walker Watson, Jr.**, knowingly transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce the writings, signs, signals, pictures, and sounds described below, and acted with a specific intent to defraud:

| COUNT | DATE (ON OR ABOUT) | DESCRIPTION OF THE INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| 1 | February 27, 2017 | Email from **Watson**'s email address "jamjr58@gmail.com" written to S.P. at his Yahoo account providing wire instructions for a bank account controlled by **Watson** in order to receive $25,000. |

| COUNT | DATE (ON OR ABOUT) | DESCRIPTION OF THE INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| 2 | June 11, 2019 | $75,000 wire from S.L. to MEP's Bank of America account controlled by **Watson**. |
| 3 | December 31, 2019 | $120,000 wire from A.C. via his business banking account to MEP bank account controlled by **Watson.** |

All in violation of 18 U.S.C. § 1343.

# NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

## Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461

1. The allegations contained in paragraphs 1 through 40 of this indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant has an interest.

2. Upon conviction of any violation of 18 U.S.C. § 1343, **James Walker Watson, Jr.**, shall forfeit to the United States any property, real or personal, that constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity," or a conspiracy to commit such offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

3. The property which is subject to forfeiture includes, but is not limited to, the following:

    Cash Proceeds:

    A sum of money equal to $3,000,000 in United States currency, and
    all interest and proceeds traceable thereto, representing the proceeds
    of the offense, for which the defendant is personally liable.

4. Pursuant to 21 U.S.C. § 853(p), as incorporated by reference by 18 U.S.C. § 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendant **James Watson**:

    a. Cannot be located upon the exercise of due diligence;

  b. Has been transferred, or sold to, or deposited with a third party;

  c. Has been placed beyond the jurisdiction of the Court;

  d. Has been substantially diminished in value; or

  e. Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of other property of **James Watson** up to the value of the above-described forfeitable properties, including, but not limited to, any identifiable property in the name of **James Watson**.

  5. By virtue of the commission of the offenses alleged in this indictment, any and all interest that **James Watson** has in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

  All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), and the procedures set forth at 21 U.S.C. § 853, as made applicable through 18 U.S.C. § 982(b)(1).

A TRUE BILL

_____SH_____         ___5/12/22___
GRAND JURY FOREPERSON      Date

BRIT FEATHERSTON
UNITED STATES ATTORNEY

_[signature]_      ___May 12, 2022___
BRENT L. ANDRUS      Date
THOMAS E. GIBSON
Assistant United States Attorneys

11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Case No. 4:22-CR-_____ Judge _____ |
| JAMES WALKER WATSON, JR. | § | |

## NOTICE OF PENALTY

### COUNTS 1-3

Violation:      18 U.S.C. §1343 (Wire Fraud)

Penalty:        Imprisonment for a term not more than 20 years, a fine not to exceed $250,000.00, or if any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant—then a fine not more than the greater of twice the gross gain to the defendant or twice the gross loss to individual(s) other than the defendant; or both such imprisonment and fine. A term of supervised release of not more than three years in addition to such term of imprisonment.

Special
Assessment:     $100.00 each count