IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DIVISION OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 4:22-CR-00125 |
| | § | |
| JAMES WALKER WATSON, JR. | § | |

**DEFENDANT'S FIRST AMENDED MOTION FOR REHEARING OF DETENTION AND REQUEST FOR PRETRIAL RELEASE**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant, James Watson, Jr., moves for rehearing of Detention and Request for pretrial release, as follows:

I.

The Defendant hereby amends the Motion filed under Docket Entry 19 in this cause to properly cite the authority for the requested relief from this Honorable Court. The Defendant can only be held under 18 U.S.C. § 1342(f)(2) upon motion of the attorney for the Government or on motion by the Court, because none of the conditions of 18 U.S.C. § 1342(f)(1) are present in this case.   United States Magistrate Judge David Baker entered an order of detention pending trial dated June 3, 2022, citing information received by the court in a detention held in the Middle District of Florida.   18 U.S.C. § 1342(f) outlines the following, "The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."   The remainder of this First Amended Motion for Rehearing

of Detention and Request for Pretrial Release will seek to demonstrate the information that currently exists, which was not known to this movant during the detention hearing held on June 3, 2022, and that has a material bearing on the conditions that can be required to reasonably assure the appearance of the Defendant at court and assure the safety of the community.

## II.

The Indictment charges the Defendant with three Counts: Count 1-3 Wire Fraud in alleged violation of Title 18 U.S.C. § 1343.  Under 18 U.S.C. § 1342(f)(2) the Defendant can only be held upon motion by the attorney for the Government or upon motion by the Court, stating that the case "involves a serious risk that such person will flee; or a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 1342(f)(2)(A) and (B).

## III.

A prior Detention hearing was held on June 3, 2022, in front of the Honorable David A. Baker, U.S. Magistrate Judge of the Middle District of Florida.  After a detention hearing beginning at 10:03am, recessing from 10:45am to 11:00am and concluding at 11:18am, Judge Baker ordered the Defendant detained.  Judge Baker acknowledged on the record (attached as Defense Exhibit 1) that the decision of detention or release needed careful analysis and that in his "30 years on the bench," he had only had to delay a ruling such as this "four or five times."  We are not asking the Court to engage in speculation of Judge Baker's thought process in his ultimate decision, but rather to highlight that this was a close call either way.  Furthermore, there is pertinent information not presented by Mr. Watson's previous attorney, Corey Cohen, as well as multiple incorrect assumptions in the

analysis of the evidence by the government's witness in the previous hearing in the Middle District of Florida on June 3, 2022.

III.

Legal Standard

In this case, Mr. James Watson, Jr. "shall" be released on an unsecured bond unless the government proves that the Defendant's appearance cannot reasonably be assured or that he poses a danger to the safety of any person or the community. See 18 U.S.C. Section 3142(b). If the government proves that the Defendant's appearance cannot reasonably be assured or that he poses a danger to the safety of any person or the community, then the Court must release Mr. Watson subject to the "least restrictive" conditions to "reasonably assure" his appearance and for the safety of any person or the community. See 18 U.S.C. Section 3142(c). As set out below, Mr. Watson is not a flight risk, and conditions short of detention will reasonably assure his appearance at trial, as well as the safety of any person or the community.

IV.

Character References

(1) Emma Amaya is a United States citizen, has no criminal history, is a resident of Texas, a homeowner in Texas, and is willing to testify at a detention hearing about James Watson's good character. Mrs. Amaya was unable to attend the first hearing on June 3, 2022. Ms. Amaya has a close friendship with James Watson, Jr. Mrs. Amaya can provide the court details on Mr. Watson's ties to the community, his kind demeanor, as well as the care, concern and assistance Mr. Watson has provided to her and her family in the seventeen years of their friendship. Mrs. Amaya is willing to testify and provide

details about Mr. Watson's calm manner and the absence of any violent, threatening or intimidating behaviors in the treatment of her, as well as any other people she has observed Mr. Watson interact with in the seventeen years she has known him.

Mrs. Amays is a small business owner, who has her own cleaning business, and she has no ties to any music festivals, the music industry, any financial institution, nor to any of the alleged wrongdoing in any of the charges against Mr. Watson.  Mrs. Amaya agrees to be a third-party custodian by driving Mr. Watson from work (should the Court allow Mr. Watson to work in an unrelated field) to home and vice versa, as well as driving Mr. Watson to any court appearances or meetings concerning Mr. Watson's pretrial release. Mrs. Amaya further agrees to serve as a surety for Mr. Watson by providing collateral for bail set by the Court in the form of her home located at 509 Birch Cluster Ct., Conroe, Texas 77301.  Additionally, Mrs. Amaya agrees to allow Mr. Watson to reside with she and her family at the above noted address.  Mrs. Amaya now works part-time and can set her own hours.  While she is at work, her husband, Alvaro Amaya, and her adult daughter, Rachel Amaya, will assist as additional third-party custodians by assuring Mr. Watson is following the court's directives.  Alvaro Amaya and Rachel Amaya are U.S. citizens with no felony charges and are physically capable and willing to assist Emma Amaya in her duties as third-party custodian.

The Amayas live in Conroe, a northern suburb of Houston.  Their home is only 39 miles away from our law offices located at 1210 W. Clay Street, Suite 12, Houston, Texas 77019.  The allegations in this case involve voluminous records, including numerous bank account records.  Having Mr. Watson close to our offices will greatly assist in our ability to properly prepare a defense in this case.  Mr. Watson's input and examination of said

documents is essential to a proper defense analysis in this case. Mr. Watson is currently housed at Cimmarron Correctional Facility in Cushing, Oklahoma, a location 7.5 hours away from our offices, making regular in-person meetings to review discovery, as well as to go over defense documents, prohibitively difficult. The Pretrial Services Department in Houston is located at 515 Rusk Street, Houston, Texas 77002, a location only 5 minutes from our law offices. The Pretrial Services Department in Houston has the means and willingness to monitor this Defendant for any restrictions that the Court deems appropriate (e.g., home confinement, GPS monitoring, Internet restrictions). We confirmed by phone that Pretrial Services simply requires a courtesy supervision request form to be sent upon the release of a defendant.

(2) Mr. Watson's fiancé, Ann Marie Kuykendall, was present and did testify in the June 3rd detention hearing. Ms. Kuykendall is a U.S. citizen, has no criminal history, and is a homeowner and resident of Apopka, Florida. Ms. Kuykendall is willing to testify and provide details about Mr. Watson's good character, his kind demeanor, and the absence of any violent, threatening or intimidating behaviors in the treatment of her, as well as any other people she has observed him interact with. She will also testify to the love and support he provides to her as her fiancé. Ms. Kuykendall was not asked any of these questions by Mr. Watson's previous attorney, Mr. Cohen, in her previous testimony. Ms. Kuykendall was only asked questions by Mr. Cohen related to the multiple medications that are prescribed to Mr. Watson for his heart and thyroid conditions, as well as her knowledge of Mr. Watson's criminal history. Ms. Kuykendall agrees to serve as a third-party custodian, just as she indicated in the previous detention hearing, should the Court prefer Mr. Watson be released to Florida and supervised by the Middle District of Florida

Pretrial Services Division. Ms. Kuykendall is a retired physician's assistant, who is also capable of relocating to Texas to assist the Court in her duties as a third-party custodian for Mr. Watson. Ms. Kuykendall owns her home located at 619 Gaelic Court, Apopka, Florida 32712, and is equally willing to serve as a surety, providing her home as collateral for bail set by the Court.

V.

Employment

Mr. Watson has been working in Orlando, Florida in preparing for a jazz music festival that was due to take place in July 2022. The festival was cancelled due to Mr. Watson's incarceration. While Mr. Watson has continuing responsibilities related to his work for said music festival, there are other individuals involved with the festival that can handle such matters. Upon release, Mr. Watson agrees to any conditions set by the Court, including for him to avoid any and all involvement in the Orlando Music Festival, or any work in the music industry, or any work involving raising money or dealing with financial institutions. Mr. Watson is a 66-year-old man with health challenges, specifically atrial fibrillation in his heart, as well as a thyroid condition. Mr. Watson is willing to obtain gainful employment having no ties to the alleged wrongdoing in this case, or to the music industry or financial investment industry. Mr. Watson has no capability in his current housing situation to search for such employment in either Houston or Orlando. Furthermore, Mr. Watson anticipates the Court to set strict conditions should he be released, as in home confinement. The Amayas in Houston and Ms. Kuykendall in Orlando have the means and willingness to support Mr. Watson under conditions of home confinement or any other conditions set by the Court upon release. Thus, he will have the

means to support himself productively with individuals who know him and know that he has been accused of a crime.

VI.

Residence

Mrs. Emma Amaya agrees to be a third-party custodian at home by allowing Mr. Watson to live at Mrs. Amaya's home located at 509 Birch Cluster Ct., Conroe, Texas 77301. Ms. Kuykendall is equally willing and agrees to be a third-party custodian at home by allowing Mr. Watson to live at Ms. Kuykendall's home located at 619 Gaelic Court, Apopka, Florida 32712.

VII.

Other Reasons to Appear

Mr. James Watson, Jr. is a US citizen. Mr. James Watson, Jr. knows that failing to appear may constitute a crime much easier for the government to prove than the wire fraud charges. He also knows that if released he more easily can assist his attorney to prepare for trial. Furthermore, Mr. Watson suffers from heart and other health concerns. Mr. Watson was scheduled for multiple surgeries for non-life threatening but still serious conditions for both his eyes and his knee, which have been rescheduled and cancelled due to his incarceration. In his current housing situation, treatment for these conditions will not be possible. Because of Mr. Watson's ongoing health concerns, he will need to return to the care of a cardiologist upon pretrial release. These are additional reasons for Mr. Watson to be motivated to comply with all court directives and to remain available for trial.

VIII.

18 U.S.C. Section 3142(g)

Title 18 U.S.C. Section 3142 (g) lists many factors for the Court to consider before ordering detention, including whether the charged offense involves violence or drugs and whether the defendant was on probation or parole at the time of the charged offense. These factors support release, not detention, in Mr. Watson's case.   Mr. Watson is 66 years of age, has a compromised immune system and is incarcerated, endangering him due to a higher risk of exposure to Covid-19.   Mr. Watson is charged with financial crimes with no indicted allegations of threats or violence, and certainly no allegations involving drugs.   In the first detention hearing, the government's witness, Agent Whitley *interpreted* statements made by Mr. Watson as threats of violence but could not testify as to any specific threats of violence.   When pressed on cross-examination, Agent Whitley admitted that the threats made by Mr. Watson to the alleged victim, Sunil Patel, were actually statements of financial loss that Patel could have faced by withdrawing as an investor (see attached as Defense Exhibit 2).   Agent Whitley also testified that Mr. Patel received a message from Mr. Watson stating, "Don't play with me," which again Agent Whitley interpreted as a threat, but this message was not actually produced as evidence and even if true is not any kind of direct threat.   The statement can be equally interpreted as a benign statement to a business partner that the partner needs to follow through on their commitments.   This is particularly true when there is no evidence of any physical force or previous direct threat, as is the case here.   Agent Whitley testified to statements made to multiple witnesses (Susan Lindsey and Virginia Chartier) about the consequences of them not continuing their investment.   The statements are interpreted by Agent Whitley to be threats of physical

harm, but there was no evidence produced showing any direct threats to the alleged victims in this case, and the statements are equally interpreted as a warning that discontinuing their investments will lead to financial loss, as Agent Whitley admitted was the case with Sunil Patel (see Defense Exhibit 2).

One of the charged alleged victims, Allen Cox, has engaged in undeniable threatening behavior towards Mr. Watson in the form of electronic mail sent to Mr. Watson's business partner, John Griffin (see Defense Exhibit 3).  Allen Cox writes on August 14, 2021 to John Griffin of Mr. Watson, "You need to know this: I can put the dogs on him and forget the money he owes me. It's coming to that time soon."  The government in the first detention hearing spent a lot of time interpreting and arguing that James Watson, Jr. is a threatening person that poses a danger to the alleged victims and the community. However, they produced no evidence of any statement by Mr. Watson coming close to this electronic mail message by one of their own alleged victims.  That message demonstrates that Allen Cox is certainly not a person in fear for his safety should Mr. Watson be released. As for the other alleged victims, the government on the one hand argued in the first hearing that Mr. Watson was a flight risk and could not be found by the alleged victims, but on the other hand that they felt their lives endangered by his release.  They cannot have it both ways.  If the alleged victims are actively attempting to locate Mr. Watson with difficulty, they are not in fear for their safety from him.

IX.

The Governement's Argument of Flight

Mr. Watson has engaged in a type of business, being the music industry, and specifically putting together music festivals.  Even Agent Whitley acknowledged in his

testimony in the first detention hearing on June 3, 2022, that the 2018 Southfork Music Festival proceeded as planned. The agent voiced concerns with the repayment of investors, not the validity of the festival. These festivals are customarily put together in different parts of the country. Mr. Watson left the Dallas area and began work on proposed music festivals in Georgia and then Florida. There is no indication that Mr. Watson alluded law enforcement in any way. To the contrary, the Indictment in this case was filed May 12, 2022, in the Eastern District of Texas, Sherman Division, and Mr. Watson was arrested on May 30, 2022, halfway across the country without incident. Furthermore, Agent Whitley never attempted to locate or contact Mr. Watson to discuss these allegations. Mr. Watson was never made aware of the allegations or the Indictment until his arrest on May 30, 2022. The only allegations with regard to flight risk that the government can point to are that the alleged victims having difficulty communicating with Mr. Watson. Agent Whitley did not testify to the alleged victims seeking law enforcement's assistance in locating and speaking with Mr. Watson, nor did he testify to the alleged victims seeking the services of a private investigator in locating Mr. Watson. The alleged victims are people that are several years removed from being involved in James Watson's life, and the consideration for release is not an assurance that Mr. Watson will timely communicate with alleged victims, but rather to assure his presence at any and all court proceedings.

## X.

### The "Least Restrictive" Conditions of Release

As set out above, the Bail Reform Act presumes that Mr. James Watson, Jr. will be released on his own recognizance. If necessary, however, the Court has an arsenal of

conditions short of detention that will help assure Mr. Watson's appearance at trial, including the following:

    A. <u>Bond</u>. Mr. James Watson, Jr. will sign a bond in any amount. In addition, his proposed sureties, Emma Amaya and Ann Marie Kuykendall will sign a bond on his behalf. Both Mrs. Amaya and Ms. Kuykendall, who own their own residences as noted above agrees to co-sign on the bond.

    B. <u>Cash Deposit</u>. Mr. James Watson, Jr.'s sureties will be willing to pay cash to be deposited into the Court's Registry. Although the cash deposits will place a hardship on Mr. Watson's sureties, they offer this as a cash deposit to the Court.

    C. <u>Other Conditions</u>. Mr. James Watson, Jr. understands and will agree to any conditions the Court might impose, such as home confinement, a curfew, travel restrictions, reporting to pretrial services, and electronic monitoring.

XI.

Conclusion

Due to the lack of evidence presented by Mr. Cohen, Mr. Watson's previous attorney, with regard to the good character, peacefulness and lack of violent or threatening behavior by Mr. Watson, it is our contention that Judge Baker received a skewed and mistaken perception of Mr. Watson. As the alleged threats by Mr. Watson to the alleged victims were the focus of the government's presentation in the June 3, 2022 detention hearing, the lack of information from the defense side as to Mr. Watson's good character and non-intimidating or non-threatening manner of being, inevitably played a major role in Judge Baker's difficult decision. The

Pretrial Services Department conducted interviews and produced a report recommending release. That recommendation has been updated in the Eastern District, but is based solely on the flawed evidence and presentation by the defense in the first hearing.

The Defendant is now moving for a new hearing to present a balanced analysis for this Honorable Court. The alleged victims reside in the area of the Eastern District, Sherman Division and should be available to testify directly if the government chooses to present any evidence to support the second-hand interpretations made by Agent Whitley in the first hearing. Furthermore, the defense has obtained new information and witnesses that were not available nor submitted to Judge Baker for consideration in his initial decision. The defense will present Emma Amaya, character testimony from Ann Marie Kuykendall, and evidence of numerous threats made to Mr. Watson (directly and indirectly) by the alleged victim in this case. Therefore, we respectfully request an opportunity to present such evidence at a rehearing of detention.

Respectfully submitted,

_____
Spence D. Graham
TBN 24036665
1210 W. Clay Street, Suite 12
Houston TX 77019
Tel (713) 229-9992
Fax (713) 229-9996
Email: graham_spence@sbcglobal.net
**Attorney for Defendant**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been delivered via ELECTRONIC MAIL on this the 28th day of October 2022.

_____
Spence D. Graham
TBN 24036665
1210 W. Clay Street, Suite 12
Houston TX 77019
Tel (713) 229-9992
Fax (713) 229-9996
graham_spence@sbcglobal.net
**Attorney for Defendant**

## CERTIFICATE OF CONFERENCE

The foregoing Motion was discussed with Assistant United States Attorneys Brent Andrus and Thomas Gibson. The Governments' position is as follows: Opposed.

Dated: October 28, 2022

_____
Spence D. Graham
TBN 24036665
1210 W. Clay Street, Suite 12
Houston TX 77019
Tel (713) 229-9992
Fax (713) 229-9996
graham_spence@sbcglobal.net
**Attorney for Defendant**