IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| UNITED STATES OF AMERICA | ' | |
|---|---|---|
| | ' | |
| V. | ' | Case No. 4:22-CR-125 |
| | ' | Judge Mazzant |
| JAMES WALKER WATSON, JR. | ' | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR RELEASE PENDING SENTENCING

Comes now the government, by and through the undersigned Assistant United States Attorney, and files this Response to defendant's First Amended Motion for Release Pending Sentencing (ECF Dkt. No. 38).  The defendant's motion fails to address in any meaningful way the evidence showing that the defendant would pose a significant flight risk if released. The litigation regarding the defendant's release in this case has been voluminous and exhausting.   No argument that the defendant can muster can overcome his stunning criminal record of fraud and theft.   He has 12 prior convictions (!) including two federal convictions. Moreover, he has previously violated his federal supervised release and been revoked.   His motion should be denied.

### BACKGROUND

Defendant was charged in a three-count indictment on May 12, 2022.   The indictment alleged Watson engaged in a wire fraud scheme in which he touted himself as a well-connected entertainment industry insider and concert promoter.   He solicited investment funds from a large number of individuals, several of them being elderly women,

1

using various misrepresentations regarding himself, the purported business opportunities, and his use of investor funds. The indictment alleges that when Watson failed to return funds in the promised timeframe, he often threatened that without further investment and involvement from the investors, he would never return their funds at all. The indictment alleges that the defendant attempted multiple concerts at South Fork Ranch in Parker, Texas as part of his fraud scheme. But before the indictment was returned, the defendant had relocated to Florida, where he was attempting to hold another concert. The defendant was arrested during a routine traffic stop in central Florida.

Because he was arrested in Florida, the defendant made his initial appearance before a magistrate judge in the Middle District of Florida. The defendant had the option to have his detention hearing in Florida or to wait and have it in the Eastern District of Texas where the charges were pending. He chose to move forward with a detention hearing in Florida. A full detention hearing including testimony offered by both sides and the admission of several exhibits was held before Magistrate Judge David A. Baker on June 3, 2022. At the hearing, the defendant was represented by counsel (though not his current counsel). At the hearing, the defendant (via counsel) cross-examined the testifying FBI agent, called multiple witnesses of his own, and offered exhibits. A custodian was proposed and examined (notably one of the same custodians as proposed in the defendant's current motion). After a full hearing, Magistrate Judge Baker ordered the defendant detained pending trial based on both community safety and flight concerns.

Since the hearing, the defendant has now pled guilty to Count 2 of the indictment.

He is now detained pending his sentencing.

## ARGUMENT

The release or detention of a criminal defendant pending sentencing is governed by 18 U.S.C. § 3143(a), which places squarely on the defendant the burden of showing by clear and convincing evidence that he is not a flight risk. As relevant here, § 3143(a)(1) provides that "the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence … be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released ...." Furthermore, "[t]he burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant." Fed. R. Crim. P. 46(c).

"A convicted defendant has no constitutional right to bail," and thus "any putative right to bail derives from 18 U.S.C. § 3143, which establishes a presumption against its being granted." *United States v. Olis*, 450 F.3d 583, 585 (5th Cir. 2006) (internal quotation marks omitted); *see also United States v. Williams*, 822 F.2d 512, 517 (5th Cir. 1987). The presumption in favor of detention pending sentencing is a strong one; § 3143 establishes "high procedural hurdles" that a defendant must clear before being released pending sentencing. *United States v. Abuhamra*, 389 F.3d 309, 320 (2d Cir. 2004). Indeed, the Fifth Circuit has recognized that "[t]he decision to detain [the defendant] after conviction is a common one because of the presumption in favor of detention that attaches to a convicted defendant." *United States v. Morrison*, 833 F.3d 491, 506 (5th Cir. 2016).

The defendant has fallen far short of rebutting this presumption by clear and convincing evidence. As the Court has already recognized, the defendant is a substantial flight risk if he is released pending sentencing, for a number of reasons.

*First*, the defendant faces the prospect of a lengthy term of incarceration following his conviction because of the nature and circumstances of his offense as well as his substantial criminal record. *United States v. Akingbade*, No. 3:15-cr-164-B, 2017 WL 3582047, at *5 (N.D. Tex. Aug. 18, 2017) (Horan, M.J.) (denying release pending sentencing in a health care fraud case, noting that "[c]onviction of offenses carrying the possibility of substantial prison terms increases any defendant's incentive to flee ...."); *United States v. Dimora*, No. 1:10-cr-387, 2012 WL 1409396, at *4 (N.D. Ohio Apr. 23, 2012) (denying motion for release pending sentencing in fraud and bribery case based in part on the fact that the defendant "is facing considerable time in prison").

*Second*, the nature of the defendant's crimes counsels against his release pending sentencing. The defendant directed an audacious fraud scheme. Put simply, the defendant's extensive criminal conduct has demonstrated that he has no respect for the laws of this country, and no compunction about using lies and deception to advance his own interests, including his interest in being released from custody. The defendant's wide-ranging record of fraud and deceit strongly indicates that the defendant would feel little obligation to comply with conditions of release pending sentencing, and that any assurances by the defendant to the contrary cannot be trusted. *See Dimora*, 2012 WL 1409396, at *3 ("Based upon the evidence in this case, it appears that Dimora's actions

4

over this time period, and the actions taken by his friends at his direction and on his behalf, were calculated to deceive other government employees and the public, and to conceal the criminal activity from the authorities. The Court is unpersuaded that defendant Dimora would not employ similar conduct to elude capture."); *United States v. Nicolo*, 706 F. Supp. 2d 330, 334 (W.D.N.Y. 2010) (denying defendant's motion for release pending appeal in a fraud and money laundering case, noting that the defendant's deceptive conduct over a period of several years showed that he "could not be trusted to abide by any conditions that might be set on his release").

*Third*, the defendant has demonstrated an ability to conceal and launder large quantities of money, and he may have access to financial resources that would enable him to flee. Even if the defendant himself does not presently have access to financial resources, however, he has demonstrated an ability to raise significant funds from other sources. *See United States v. Stanford*, 341 F. App'x 979, 983 (5th Cir. 2009).

Against this overwhelming evidence of the substantial flight risk posed by the defendant's release on bond, the defendant makes two primary arguments, both of which fall far short of establishing by clear and convincing evidence that he is unlikely to flee. First, the defendant argues that he has not received sufficient medical care during his detention, although he offers no evidence to support these assertions other than his own self-serving statements.

In any event, however, it is unclear how the defendant's purported medical difficulties can establish that he is not likely to flee if provided bond pending appeal, which

5

is the relevant standard under § 3143(a)(1). *See United States v. Kachkar*, 701 F. App'x 744, 747 (11th Cir. 2017) (affirming the district court's detention order despite the defendant's complaints that "the federal detention center cannot properly treat his health issues," noting that the defendant "does not explain why those conditions showed that he was not a flight risk"); *Dimora*, 2012 WL 1409396, at *4 ("[H]ealth problems alone do not necessarily mean that a defendant does not pose a flight risk or a risk of danger to others."); *Nicolo*, 706 F. Supp. 2d at 332 ("[W]hile it does appear that Nicolo suffers from some health problems, that alone does not mean that he poses no flight risk or danger to others."); *United States v. Sudeen*, No. CR-02-062, 2003 WL 21977170, at *1-2 (E.D. La. Aug. 14, 2003) (denying fraud defendant's request for release pending sentencing, noting his "substantial overseas connections" and concluding that "there is no evidence that the defendant cannot obtain necessary medical treatment while in custody"). Similarly here, the defendant's medical complaints do not establish that he is not a flight risk, and they do nothing to undermine the ample trial evidence supporting this Court's detention order. The defendant's own self-serving statements are plainly insufficient to establish by clear and convincing evidence that he is not likely to flee if released.

Second, the defendant has proffered the support of two friends who are allegedly willing to act as character witnesses and sureties for the defendant. The United States does not doubt that these individuals are well-intentioned and, if called as witnesses, they may even support the defendant. Nonetheless, the evidence shows that defendant has a demonstrated history of deceiving and manipulating others, including those close to him,

in order to further his own interests. *See Dimora*, 2012 WL 1409396, at *3 (declining to rely on affidavits submitted by defendant's friends in support of motion for release pending sentencing, noting that "[g]iven Dimora's willingness to exploit his friends to further his criminal pursuits, the Court finds that there is every reason to believe that he would not hesitate to prevail upon friends to help him flee"). The asserted character references of the defendant's acquaintances do nothing to rebut the abundant evidence of the defendant's fraudulent conduct or prior failure to abide by a court's restrictions during supervised release.

The defendant also proposes that he be required to wear an electronic monitoring device. This argument is similarly unavailing. "It is well settled that electronic monitoring, use of GPS device and home detention do not guarantee against flight." *United States v. Khanu*, 675 F. Supp. 2d 69, 74 (D.D.C. 2009) (quoting *United States v. Bergrin*, Crim. No. 09-369, 2009 WL 1560039, at *10 (D.N.J. May 29, 2009)) (internal quotation marks and alterations omitted). "The GPS system of surveillance is imperfect, and even attentive monitoring leaves the possibility of several hours' delay between a defendant's departure and the beginning of an effective search." *Id.* at 75; *see also United States v. Megahed*, 519 F. Supp. 2d 1236, 1244 (M.D. Fla. 2007) ("Neither electronic monitoring nor the GPS system of surveillance defeats the resolute, resourceful, energetic, and non-compliant releasee. Even attentive and persistent monitoring by personnel of Pre-trial Services leaves the possibility of some hours' delay in both notifying law enforcement of a releasee's departure and beginning an effective search with the aid of a warrant and other

essential aids to investigation and pursuit.") (internal citation omitted); *United States v. Benatar*, No. 02-CR-99, 2002 WL 31410262, at *3 (E.D.N.Y. Oct. 10, 2002) ("The GPS system, while technologically sophisticated, is ultimately just another form of electronic surveillance, and monitoring equipment is easily rendered inoperative or becomes so by mechanical failure. Furthermore, home detention with electronic monitoring does not prevent flight; at best, it limits a fleeing defendant's head start.") (internal quotation marks and citation omitted). Given the defendant's history of violating court orders, a few hours' head start is all the defendant would need to depart the United States.

## CONCLUSION

The defendant's conviction in this case provides an ample basis for the Court's determination that the defendant has failed to carry his burden of proving by clear and convincing evidence that he is unlikely to flee pending sentencing. The defendant's motion fails to address this record and offers no new evidence justifying release. The Court should deny the defendant's motion for release pending sentencing.

Respectfully submitted,

DAMIEN M. DIGGS
UNITED STATES ATTORNEY

    /s/ *Jay R. Combs*
BY:   JAY R. COMBS
Assistant United States Attorney
101 East Park Boulevard, Suite 500
Plano, Texas 75074
972-509-1201

8

Fax: 972-509-1209

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2023, I electronically served a true and correct copy of this document on Defendant's counsel of record by means of the Court's CM-ECF system.

                                                              */s/ Jay R. Combs*
                                                              Jay R. Combs
                                                              Assistant United States Attorney